# United States Court of Federal Claims

No. 11-735 C
(Filed Under Seal: November 8, 2011)
(Reissued: November 17, 2011)
(Reissued Redacted: November 18, 2011)[*]

_____

**SERCO, INC.,**

    *Plaintiff,*

**v.**

**THE UNITED STATES OF AMERICA,**

    *Defendant,*

**and**

**CAPSTONE CORP.,**

    *Intervenor-Defendant.*
_____

Post-Award Bid Protest;
Temporary Restraining Order;
Preliminary Injunction;
RCFC 65.

    *Cameron S. Hamrick*, Mayer Brown, LLP, Washington, DC, for plaintiff.

    *Armando A. Rodriguez-Feo*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, for defendant.

    *Ronald S. Perlman*, Holland & Knight, LLP, Washington, DC, for intervenor-defendant.

## OPINION *and* ORDER

**Block,** *Judge.*

    Before the court in this post-award bid protest is plaintiff's motion for reconsideration of this court's denial of a temporary restraining order ("TRO"). Plaintiff's initial application for a TRO was filed on November 3, 2011, along with its bid protest complaint, motion for a

---

[*] This opinion originally was issued under seal on November 8, 2011. The court afforded the parties an opportunity to propose redactions in the opinion prior to its publication. The opinion was reissued on November 17, 2011, and is herewith reissued with redactions and other minor changes.

preliminary injunctive relief, and a memorandum of law supporting its legal and factual allegations. The court held a status conference the next day during which it (1) established a rigorous scheduling order to expedite this litigation, (2) denied plaintiff's application for a TRO, (3) granted plaintiff's motions for a protective order, and leave to file the complaint and other pleadings under seal, and (4) granted Capstone Corporation's (Capstone) motion to intervene as a third-party. The court explicitly refused to rule on plaintiff's pending motion for interim injunctive relief before the upcoming hearing could be held on cross-motions for judgment on the administrative record and for a preliminary or final injunction. *See* Rule 65(a)(2), Rules of the Court of Federal Claims ("RCFC"). The court hoped that the parties would resolve this matter given that it was in the mutual interest of the parties to agree. Unfortunately, that has not happened, and this court must now decide the motion based on limited materials before the full administrative record is filed. In light of the balance of the hardships favoring interim injunctive relief, and the need to preserve the status quo ante, plaintiff's application for a TRO is **GRANTED**.[1] As explained below, to protect the intervenor and the government in the event that the bid protest is denied, plaintiff is **DIRECTED** to post a bond in the amount of $300,000.00.

## I. BACKGROUND

Plaintiff, Serco, Inc., ("Serco") is the incumbent provider of personal effects ("PE") services at the Human Resource Command of the Army's Joint Personal Effects Depot ("JPED"). Compl. at 2. PE services include the receiving, safeguarding, inventorying, storing, processing, and final disposition of fallen soldier's personal effects. *Id.* Serco has been providing the Army with PE services since 2004. *Id.* at 3. The Army issued a request for proposal ("RFP") for PE processing services at JPED on March 1, 2011 because Serco's contract was set to expire on July 31, 2011. *Id.* at 4. Capstone, a competitor of Serco's, was awarded the new contract for PE processing. This bid-protest ensued.

On October 12, 2011, the General Accountability Office ("GAO") denied plaintiff's protest. Appx. Tab B. Thereafter, on November 3, 2011, plaintiff filed its complaint, applications for a TRO and preliminary injunction, and a memorandum in support thereof with the court. In addition, plaintiff submitted an appendix containing various documents relating to

---

[1] During the status conference, the court denied plaintiff's application for a TRO as "moot," given that defendant and intervenor had made an appearance. Plaintiff on November 7 filed a "Supplemental Memorandum" providing authority showing that a TRO could in fact be granted after the adverse parties had made an appearance. The court construes this filing as a motion for reconsideration under RCFC 59(a). *See* RCFC 1 ("The RCFC should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."); *see generally Young v. United States*, 60 Fed. Cl. 418, 425–26 (2004) (treating a second complaint as an amendment to the first to advance the filing's "substance and not the labels mistakenly placed on them"). The authority plaintiff cites is compelling, and the court will reconsider its denial of the TRO.

the bid process, including, *inter alia*, excerpts from the Source Selection Plan ("SSP"), Appx. Tab 20; the RFP, Appx. Tab 4; plaintiff's proposal, Appx. Tab 7; Capstone's proposal, Appx. Tab 6; and documents reflecting discussions between the Army and other bidders, the Army's evaluation of the proposals, and the decision to award the contract to Capstone, Appx. Tab 8, 10, 13, 14, 17, 23, 24, and 26. The materials also include a letter from the contracting officer ("CO") explaining the final cost estimate, Appx. Tab A. (Aug. 30, 2011); as well as two "Statements of Fact" by the CO purporting to describe the Army's conduct during the procurement process, Appx. Tab 1 (Aug. 4, 2011), Tab 6 (Aug. 24, 2011).

Finally, the appendix contains the Declaration of Steven Sultan, Serco's Vice President for Defense Personnel Services, dated November 1, 2007. Appx. Tab C. The Declaration states that Serco will lose [amount redacted] per month in revenue, of which [amount redacted] represents profits, if the court denies injunctive relief. Appx. Tab C at 2. It also states that Serco will have to terminate its employment of 134 individuals in the absence of injunctive relief. Appx. Tab C at 2. Mr. Sultan in his Declaration alleges that it would be "very difficult" for Serco to rehire these employees and that terminating them would increase Serco's business and employment costs. Appx. Tab C at 2-5.

## II. DISCUSSION

RCFC 65 authorizes this court to issue provisional injunctive relief, whether a TRO or a preliminary injunction. The court may grant such relief if plaintiff establishes (1) the likelihood of success on the merits, (2) the prospect of irreparable harm to plaintiff in the absence of injunctive relief, (3) the balance of hardships, and (4) the public interest. *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (permanent injunction); *CC Distribs., Inc. v. United States*, 65 Fed. Cl. 813, 815 (2005) (TRO) (citing *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004)); *see also Yakus v. United States*, 321 U.S. 414, 440 (1941) ("[W]here an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff."). Furthermore, in the context of bid protests, the Tucker Act also this court, in conducting its balancing, to "give due regard to the interests of national defense and national security and the need for expeditious resolution of the action." 28 U.S.C. § 1491(b)(3); *see also ViroMed Labs., Inc. v. United States*, 87 Fed. Cl. 493, 504 (2009).

This Federal Circuit balancing approach has a provenance rooted in "equity practice with a background of several hundred years of history." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). Flexibility rather than rigidity has distinguished injunctive relief making it the "instrument for nice adjustment and reconciliation between the public interest and private needs." *Id.* To be sure, it is inherent in the court's balancing of competing public interests to weigh each harm or benefit based upon both its magnitude and likelihood of occurrence. Such an approach has a long lineage in the law dating back at least to Judge Learned Hand's famous

"sliding scale" formula for determining liability in negligence suits. *See United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947); *see also Linc Gov't Servs., LLC v. United States*, 96 Fed. Cl. 672, 701 (2010). Accordingly, when balancing the factors under the "sliding scale" or balancing approach, a weak showing of likelihood of success on the merits could be cured by a strong showing that the balance of the equities favors plaintiff, or vice versa. *Standard Havens Prods., Inc. v. Gencor Indus.*, 897 F.2d 511, 513 (Fed. Cir. 1990) ("[I]f the other elements are present (*i.e.*, the balance of the hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953))).

Plaintiff contends that the hardships it would suffer justify this court issuing a TRO. It argues that "[a]ny short-term harm to Capstone from not immediately starting contract performance is outweighed by the harm to plaintiff, its employees, and the Army if the status quo is disrupted by a change in contractors." Pl.'s Mem. at 37. It contends that if no injunctive relief is granted it "will be forced to release the employees working on the [former] contract, many of whom have developed specialized expertise over years of service at the JPED facility." *Id.* at 37–38. It also argues that "the Army will be adversely affected by a change in contractors if Capstone commences performance and then is required to stand down in the event Serco prevails in its bid protest." *Id.* at 38.

On the other side of the coin, defendant has an interest in not continuing to pay for plaintiff's services. Indeed, defendant's counsel estimated during the status conference that the cost of continuing to pay plaintiff until November 22 would be approximately $300,000.[2] Moreover, Capstone is expecting to assume all contract functions on November 9, and the court fully expects that any delay would impose some costs on Capstone, including (as their counsel argued) possible loss of new employees tasked with administering the contract.

Nevertheless, the balance of hardships favors granting a TRO. Come November 9, Capstone's contract will take effect, ousting plaintiff from the JPED facility and bringing about all the costs necessarily associated with such a turnover. If the court was to deny the TRO and plaintiff subsequently prevailed in this bid protest, plaintiff would then oust Capstone, creating a second turnover with additional costs. Conversely, should the court grant a TRO and Capstone then prevailed in the bid protest, there would be only one turnover when Capstone replaces plaintiff. The latter scenario is obviously preferable to the former. Although the court recognizes that defendant and Capstone stand to incur costs as a result of a TRO, the balance of hardships favor plaintiff.

For the same reason, it is common sense that the public interest would be served by granting a TRO. *See Yakus*, 321 U.S. at 440. Although JPED may not serve an urgent need of

---

[2] November 22, 2011 was the date set by the court for oral argument and also the date the TRO, if granted, would expire.

national security, the public and the service-members' families, have an obvious interest (quite apart from the government's own interest) in seeing the prompt return of Nation's killed and wounded service-members' personal effects. That interest is best served by preserving the status quo ante, thus preventing possibly unnecessary turnovers in who runs the JPED facility. The only way to do that is to grant a TRO.

Although plaintiff's success on the merits is by no means certain, the court concludes that it is sufficient in light of the strong showing that the balance of hardships favors plaintiff. The plaintiff has pointed to some materials, in particular the CO's August 4 statement, the SSP, and the emails attached to the August 30 letter, that (at least arguably) call into question the validity of the Army's explanation of its award to Capstone. The court concludes that these materials raise "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." *Standard Havens Prods.*, 897 F.2d at 513. The court therefore concludes that a TRO is appropriate.

Finally, RCFC 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order *only if* the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security." "The amount of a bond is a determination that rests within the sound discretion of a trial court." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1385 (Fed. Cir. 2006) (citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997)); *see also EOD Tech., Inc. v. United States*, 82 Fed. Cl. 12, 23 (2008) (citing to *Doctor's Associates* with approval). In the past, the court has relied on the government's estimates of the costs associated with issuing a TRO. *See, e.g.*, *Bona Fide Conglomerate, Inc. v. United States*, 96 Fed. Cl. 233, 243 (2010) (relying on defendant's reasonable estimate of $50,000).

Here, defendant's counsel mentioned during the November 4, 2011 status conference that the government would, if enjoined, have to transfer $300,000 from other mission critical programs to cover two weeks of contract performance. Counsel based his estimate on Serco's bill from October, which was "something like $680,000." This estimate corresponds to the duration of the TRO, which will be in effect for 14 days. *See* RCFC 65. Although speculative, counsel's statement is reasonable because he has considered only the costs that might be incurred by defendant's compliance with a TRO. In sum, RCFC 65(c) requires a bond, and that bond is set at $300,000.

### III. CONCLUSION

Plaintiff's application for a temporary restraining order is hereby **GRANTED**.

In accordance with Rule 65 of the Rules of the United States Court of Federal Claims, the United States of America and Capstone Corporation, their officers, agents, servants, employees, representatives, and all persons acting in concert and participating with them respecting the

subject procurement are hereby **TEMPORARILY RESTRAINED AND ENJOINED** from permitting performance of or performing the contract awarded to Capstone Corporation on or about **June 24, 2011** under **RFP No. W0124D-11-R-0009**, for personal effects (PE) processing services for the Army Human Resource Command.  Defendant may secure PE services from the incumbent, Serco, Inc., or any other legal source during this timeframe.

Plaintiff shall post a bond in the amount of $300,000.00 in accordance with RCFC 65(c). If plaintiff has any questions about the proper procedure for securing a bond, it may contact the Clerk's Office at (202) 357-6400.

*s/ Lawrence J. Block*
Lawrence J. Block
Judge